## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-01552-SCT

*LISA GAIL BARNES AND KENNETH BARNES*

*v.*

*SINGING RIVER HOSPITAL SYSTEMS d/b/a*
*SINGING RIVER HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/1997 |
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | EARL L. DENHAM |
| ATTORNEY FOR APPELLEE: | JAMES H. HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 01/21/99 |
| MOTION FOR REHEARING FILED: | 2/18/99 |
| MANDATE ISSUED: | 4/29/99 |

### BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.

### SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. Between January of 1989, and September of 1995, Dr. Beverly Myers treated Lisa Barnes for rheumatoid arthritis. On August 28, 1995, Dr. Myers treated Lisa for pain and swelling in her right knee. Nine days later, on September 6, 1995, Lisa was treated in the emergency room at Singing River Hospital in Pascagoula, Mississippi due to symptoms of fever, vomiting, and pain in her right elbow. Dr. Steven Demetropoulos diagnosed Lisa with acute bronchitis and gastritis with dehydration and a right elbow fracture, then discharged her with instructions to return if her symptoms did not subside. Lisa's condition worsened over the next few hours, so her husband Kenneth returned Lisa to Singing River on September 7 at about 3:00 in the afternoon. She was diagnosed with sepsis and admitted to the hospital, where she remained in critical condition for approximately two weeks.

¶2. Once stabilized, Lisa was transferred to the University of South Alabama Medical Center in Mobile, Alabama on September 23, 1995. Her treatment there included the amputation of both legs, her right hand, and most of her left hand. Lisa was finally discharged from the hospital on January 9, 1996.

¶3. On November 13, 1995, while Lisa was still being treated, her attorney, Earl Denham, mailed a letter to Singing River requesting a copy of her medical records. When the records were not sent, Mr. Denham contacted the hospital and was informed that there was a fee for copying the file. On January 29, 1996, Mr.

Denham paid Singing River for the medical records, which he received sometime in mid-February of 1996. On May 8, 1996, Mr. Denham mailed a letter to Singing River, not addressed to any individual, informing the hospital that his investigation led him to believe that Singing River was responsible for Lisa's injuries. Mr. Denham mailed another letter to Singing River's CEO, Robert Lingle, on June 28, 1996, putting the hospital on notice of Lisa's claims, pursuant to Miss. Code Ann. § 11-46-11 (Supp. 1998). On July 24, 1996, Mr. Denham mailed a letter and draft complaint to Singing River's attorney. The draft complaint included Dr. Myers and Dr. Demetropoulos as defendants, but their names were dropped once the complaint was actually filed, due at least in part to a claim settlement. On August 30, 1996, Mr. Denham sent another letter to Singing River indicating that the one-year anniversary had passed since Lisa's injuries.

¶4. On March 5, 1997, more than seventeen months after Lisa was transferred from Singing River, Lisa and Kenneth Barnes filed their complaint against Singing River in Jackson County Circuit Court, alleging that Singing River was responsible for their damages resulting from Lisa's disabling injuries. Singing River filed its motion to dismiss on April 2, 1997, asserting that the Barneses' claims were barred by the one-year statute of limitations set out in the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11(3) (Supp. 1998). After an October 31, 1997, hearing, Circuit Court Judge Bill Jones granted Singing River's motion to dismiss in an order dated November 13, 1997. The Barneses appeal to this Court, assigning the following as error:

**WHETHER THE STATUTE OF LIMITATIONS PROVISION OF THE MISSISSIPPI TORT CLAIMS ACT IS UNCONSTITUTIONAL WHEN APPLIED TO BAR SUITS AGAINST STATE-AFFILIATED HOSPITALS.**

**WHETHER THE ONE-YEAR STATUTE OF LIMITATIONS GOVERNING SUITS AGAINST GOVERNMENT ENTITIES SET OUT IN MISS. CODE ANN. § 11-46-11 BEGINS TO RUN AT THE TIME AN INJURY IS DISCOVERED.**

**WHETHER THE STATUTE OF LIMITATIONS WAS TOLLED IN THIS ACTION BY THE DEFENDANT HOSPITAL'S REFUSAL TO RELEASE LISA BARNES'S MEDICAL RECORDS.**

**WHETHER IMMUNITY IS WAIVED TO THE EXTENT OF EXCESS LIABILITY INSURANCE CARRIED BY THE DEFENDANT.**

¶5. Because we find that the Barneses promptly filed their claim within one year of discovery of Singing River's alleged negligence in this case, we must reverse the trial court's award of summary judgment and remand this case to the Jackson County Circuit Court for further proceedings.

## STATEMENT OF THE LAW

### I.

### WHETHER THE STATUTE OF LIMITATIONS PROVISION OF THE MISSISSIPPI TORT CLAIMS ACT IS UNCONSTITUTIONAL WHEN APPLIED TO BAR SUITS AGAINST STATE-AFFILIATED HOSPITALS.

¶6. The Barneses first urge this Court to extend the rule in ***Womble v. Singing River Hosp.***, 618 So. 2d 1252 (Miss. 1993), to prevent hospitals from claiming immunity unless acting in some governmental

capacity. Their position is that state hospitals should not be immunized from medical malpractice lawsuits merely because they're owned by a governmental entity rather than privately held. "In ***Womble***, this Court overruled then-existing Mississippi law which held that physicians engaged in the public service are qualifiedly immune from suit for medical treatment decisions made during the course of that service." *Sparks v. Kim*, 701 So. 2d 1113, 1115 (Miss. 1997). The portion of the decision in ***Womble*** cited by the Barneses involved common-law qualified immunity afforded state employees prior to the April, 1993, passage of the Mississippi Tort Claims Act. ***Womble***, 618 So. 2d at 1262. The Court determined that qualified immunity for state employees did not apply to decisions involving medical treatment. *Id*. at 1263-64. The Barneses sued a state entity protected by statutory immunity, not state employees subject to common-law qualified immunity. ***Womble*** does not apply to an interpretation of statutory immunity for a state entity, as is involved in this case. We refuse to extend the holding in ***Womble*** to lift statutory immunity in medical malpractice cases against state hospitals.

¶7. The Barneses next encourage this Court to find that medical malpractice actions against hospitals should be governed by Mississippi's two-year medical malpractice statute of limitations, § 15-1-36(1), instead of § 11-46-11(3), setting the statute of limitations for actions against state agencies at one year. The language of § 11-46-11(3) defeats the Barneses' argument on this point:

> The limitations period provided herein shall control and *shall be exclusive* in all actions subject to and brought under the provisions of this chapter, *notwithstanding the nature of the claim*, the label or other characterization the claimant may use to describe it, *or the provisions of any other statute of limitations which would otherwise govern* the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

Miss. Code Ann. § 11-46-11(3) (Supp. 1998) (emphasis added). The Mississippi Legislature has conclusively stated that the one-year statute of limitations set out in § 11-46-11(3) applies to all actions against governmental entities under the Mississippi Tort Claims Act, regardless of any other statutes of limitations that would otherwise apply. We therefore find that § 11-46-11(3), and not § 15-1-36, applies in this case.

¶8. The Barneses further argue that the Mississippi Tort Claims Act "is insufficient to protect the civil liberties of plaintiffs bringing medical malpractice actions." They contend that if medical malpractice claims are governed by the one-year statute of limitations set out in § 11-46-11(3), then patients asserting claims against state-owned hospitals will almost always be barred by the statute of limitations. The Barneses point to the difficulty in discovering and litigating medical malpractice claims, compounded by the Litigation Accountability Act of 1988, Miss. Code Ann. §§ 11-55-1 et seq. (Supp. 1998), which provides for assessment of attorney's fees and costs against any plaintiff bringing an action on an insufficient factual basis. Miss. Code Ann. § 11-55-5(1) (Supp. 1998). Their position is that one year is an insufficient amount of time to discover and investigate a potential medical malpractice claim for purposes of filing a complaint with an adequate factual basis.

¶9. As Singing River points out, the constitutionality issue is barred, because it was not raised in the trial court and because the Attorney General's Office was not properly notified. "We accept without hesitation the ordinarily sound principle that this Court sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court. We depart from this premise only in unusual circumstances." ***Educational Placement Services v.***

*Wilson*, 487 So. 2d 1316, 1320 (Miss. 1986). "The law has been well settled that the constitutionality of a statute will not be considered unless the point is specifically pleaded." *Smith v. Fluor Corp.*, 514 So. 2d 1227, 1232 (Miss. 1987). Furthermore, Rule 24(d) of the Mississippi Rules of Civil Procedure requires that proper notice be given to the Attorney General when the constitutionality of a statute is challenged "to afford him an opportunity to intervene and argue the question of constitutionality." Miss. R. Civ. P. 24(d). Rule 44(a) of the Mississippi Rules of Appellate Procedure similarly requires service of any appellate brief challenging the validity of a statute "on the Attorney General, the city attorney, or other chief legal officer of the governmental body involved." M.R.A.P. 44(a). "Except by special order of the court to which the case is assigned, in the absence of such notice neither the Supreme Court nor the Court of Appeals will decide the question until the notice and right to respond contemplated by this rule has been given to the appropriate governmental body." M.R.A.P. 44(c). The Barneses' failure to raise the issue of the constitutionality of § 11-46-11(3) at trial or to notify the Attorney General's Office of their challenge of the statute results in the procedural bar on this issue.

¶10. Regarding the merits of this assignment of error, under current Mississippi case law, there is no support for the Barneses' assertion that the Mississippi Tort Claims Act violates the Mississippi Constitution. We previously addressed the constitutionality of the Mississippi Tort Claims Act under the Mississippi Constitution in *Mohundro v. Alcorn County*, 675 So. 2d 848 (Miss. 1996). In *Mohundro*, we pointed to our decision in *Robinson v. Stewart*, 655 So. 2d 866, 868 (Miss.1995) (*citing Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883 (Miss.1994); *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441 (5th Cir.1991)), wherein we held that "the remedy clause is not an absolute guarantee of a trial and that it is the legislature's decision whether or not to address restrictions upon actions against government entities." *Mohundro*, 675 So. 2d at 852. We further found that the Mississippi Tort Claims Act did not violate due process, because:

> A due process violation requires that the party be deprived of a protected property interest. *Tucker v. Hinds County*, 558 So. 2d 869, 873 (Miss.1990). As was stated by this Court in *Wells*, there was no right to sue the State or its political subdivisions at common law. The legislature has continued to withhold such a right, therefore there is no property right to sue the State. Without such a property interest there can be no due process violation.

*Id*.

¶11. More recently, in *Vortice v. Fordice*, 711 So. 2d 894 (Miss. 1998), we upheld the constitutionality of the Mississippi Tort Claims Act under the United States Constitution. *Vortice*, 711 So. 2d at 896. Specifically, we found that the statutory notice requirement of § 11-46-11 did not violate the equal protection clause. *Id.* Pointing out that there is no fundamental right to sue the State of Mississippi or its political subdivisions, we applied the rational relation test:

> [T]he legislature has an interest in conserving state funds. By enactment of the Mississippi Tort Claims Act, the legislature elected to waive sovereign immunity. However, this waiver was qualified by specifying certain procedural requirements which must be met before an action was filed. *City of Jackson v. Lumpkin*, 697 So. 2d 1179 (Miss.1997). As we noted in *Lumpkin*, there are many valid reasons underscoring the legislative requirement of notice to a governmental entity prior to filing suit. *Id*. at 1181. Notice provisions encourage settlement of claims prior to entering litigation, therefore conserving valuable governmental resources. Further, notice to the governmental entity

encourages corrective actions, where necessary, prior to litigation, therefore benefitting public health and welfare. *Although the Tort Claims Act waives sovereign immunity to a certain extent, it is still concerned with conserving government funds and protecting the public health and welfare at the earliest possible moment. Since these reasons serve a valid state purpose, the Tort Claims Act, including the notice provision, meets the rational basis test, and is therefore, Constitutional.*

*Id*. (emphasis added). Applying the same test here, we find that the one-year statute of limitations in the Mississippi Tort Claims Act is rationally related to a proper legislative purpose -- protecting the State's interest in "conserving government funds and protecting the public health and welfare at the earliest possible moment." *Id*.

## II.

### WHETHER THE ONE-YEAR STATUTE OF LIMITATIONS GOVERNING SUITS AGAINST GOVERNMENT ENTITIES SET OUT IN MISS. CODE ANN. § 11-46-11 BEGINS TO RUN AT THE TIME AN INJURY IS DISCOVERED.

¶12. The Barneses argue that even if the one-year statute of limitations in § 11-46-11(3) applies to this case, then their claim was promptly filed since they filed their complaint within one year of their discovery of Singing River's negligent treatment of Lisa. Their position is that they had no way of knowing that Singing River was liable until May 8, 1996, when the physician contacted in Mr. Denham's investigation informed him that the care provided by Singing River was substandard. As a result, they maintain that their complaint, filed on March 5, 1997, was timely filed within one year of their discovery of Singing River's negligent conduct.

¶13. As an example of a statute of limitations incorporating the discovery rule, § 15-1-36(1) provides that medical malpractice actions must be brought "within two (2) years from the date the alleged act, omission, or neglect *shall or with reasonable diligence might have been first known or discovered*." Miss. Code Ann. § 15-1-36(1) (Rev. 1995) (emphasis added). Singing River's position is that § 11-46-11(3) is devoid of the discovery language present in § 15-1-36(1), so the discovery rule must not apply to cases governed by § 11-46-11(3). Section 11-46-11(3) reads in pertinent part:

All actions brought under the provisions of this chapter shall be commenced *within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after*; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days.

Miss. Code Ann. § 11-46-11(3) (Supp.1998) (emphasis added).

¶14. Despite the absence of specific discovery language in the statute, we find that the discovery rule applies to § 11-46-11(3). This finding is not without precedent. In *Sweeney v. Preston*, 642 So. 2d 332 (Miss. 1994), this Court traced the history of application of the discovery rule in medical malpractice actions involving latent injuries. Before the enactment of § 15-1-36, the six-year general statute of limitations applied to medical malpractice claims and did not contain a discovery rule provision for latent injuries as it does now. *Sweeney*, 642 So. 2d at 333. This Court did not interpret the general statute to include a

discovery rule in medical malpractice cases at that time. *Id*. In passing § 15-1-36, the Legislature shortened the time period for bringing a medical malpractice suit, but adopted a discovery standard for triggering the running of the statute. *Id*. Similarly, when the Legislature amended § 15-1-49 (the general statute of limitations), shortening the limitations period from six years to three years, it included a discovery provision for latent injuries as a trade-off.

¶15. In medical malpractice cases involving negligence occurring before the 1976 enactment of § 15-1-36 where the injuries were not discovered until after the enactment date, this Court applied the discovery rule, despite the fact that the new statute of limitations could not be applied retroactively. *Sweeney*, 642 So. 2d at 333-34 (*citing **Kilgore v. Barnes**, 508 So. 2d 1042 (Miss.1987); **Williams v. Kilgore**, 618 So. 2d 51 (Miss.1992)). The *Sweeney* Court summarized the rationale behind application of the discovery rule to cases involving latent injuries as follows:

> Thus, where an injury or disease is latent, a determination of when the statute of limitation begins to run focuses not on the time of the negligent act or omission, but on when the plaintiff discovers the injury or disease. Moreover, knowledge that there exists a casual relationship between the negligent act and the injury or disease complained of is essential because "it is well-established that prescription does not run against one who has neither actual nor constructive notice of facts that would entitle him to bring an action."

642 So. 2d 332, 334 (*quoting **Williams***, 618 So. 2d at 55).

¶16. Before the Legislature amended § 15-1-49 to include a discovery provision for latent injuries, this Court recognized a common law exception. *Schiro v. American Tobacco Co.*, 611 So. 2d 962, 965 (Miss. 1992). In *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704 (Miss. 1990), this Court held that "a discovery rule exists in conjunction with § 15-1-49 (1972) in the case of a negligence or products liability cause of action involving latent disease." *Edwards*, 573 So. 2d at 709. In *Schiro*, we applied the principles in *Edwards* to hold that the statute of limitations did not begin to run against a plaintiff filing suit against four cigarette manufacturers until the doctor diagnosed her lung cancer. *Schiro*, 611 So. 2d at 964-65.

¶17. We have also recognized a discovery rule in statutes of limitations governing other areas of law. In the area of worker's compensation, we have held that "the two-year limitation statute does not begin to run until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Tabor Motor Co. v. Garrard*, 233 So. 2d 811, 814 (Miss.1970).

¶18. In *Evans v. Boyle Flying Service, Inc.*, 680 So. 2d 821 (Miss. 1996), we held that a notice of claim period did not begin to run until discovery of the injury. The statute in question, § 69-21-123, requires notice to the Mississippi Department of Agriculture and Commerce regarding any claim for damages resulting from crop spraying "within sixty (60) days after the date that the damages occurred and prior to the time that twenty-five percent (25%) of a crop damaged shall have been harvested in the event claim concerns a crop. . . ." Miss. Code Ann. § 69-21-123 (1991). Despite the lack of a discovery provision in the statute, we held that the sixty-day period "does not begin to run until the date the claimant knew or reasonably should have known of the damage." *Evans*, 680 So. 2d at 829. In so finding, we stated:

> It does not appear reasonable to subsequently bar a person's cause of action when they had no initial reason to know that time was running. In other words, should a person be prevented from recovering on a claim, i.e. an injury for which redress is guaranteed by our Constitution and statutory law, by

being barred by a limitation period, in actuality a statute of repose if it were so construed, when they should not have reasonably known that damage had occurred. To hold that a person can not recover when they did not or could not have been able to discover the damage within sixty days after the spraying works an injustice.

*Id*. at 827 (footnote omitted).

¶19. Similarly, in *Smith v. Sneed*, 638 So. 2d 1252 (Miss. 1994), we extended the discovery rule to apply in legal malpractice actions, despite the Legislature's failure to incorporate discovery language in the general statute of limitations. *Sneed*, 638 So. 2d at 1256-58. We based our decision upon previous cases in which this Court "created similar exceptions in the past, the Legislature's failure to extend the discovery rule beyond medical malpractice notwithstanding." *Id*. at 1256. Specifically, we pointed to our holdings in *Edwards*, *supra* (statute does not begin to run in latent injury cases until discovery thereof); and *Staheli v. Smith*, 548 So. 2d 1299 (Miss.1989) (statute of limitations in suit for defamatory material does not begin to run until reasonable discovery of the material). *Id*. at 1256-57.

¶20. Following the same line of reasoning as in the above cases, we choose to incorporate a discovery rule in actions brought under the Mississippi Tort Claims Act involving latent injuries. Particularly considering the short, one-year statute of limitations period in § 11-46-11(3), we find that justice is best served by applying a discovery standard to such cases. As we stated in *Smith v. Sanders*, 485 So. 2d 1051 (Miss. 1986):

> There may be rare cases where the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

*Sanders*, 485 So. 2d at 1052-53. Such is the case here. While the Barneses may have been aware of Lisa's injuries before the one year time limit was up, they could not reasonably have known that Singing River was responsible for those injuries until their medical expert notified them of the possible negligence on May 8, 1996. We find that the statute of limitations did not begin to run until that date. As a result, the Barneses' complaint, filed on March 5, 1997, was timely filed within the one-year statute of limitations.

### III.

### WHETHER THE STATUTE OF LIMITATIONS WAS TOLLED IN THIS ACTION BY THE DEFENDANT HOSPITAL'S REFUSAL TO RELEASE LISA BARNES'S MEDICAL RECORDS.

¶21. The Barneses alternatively claim that the statute of limitations was tolled in this case by Singing River's fraud in refusing to release Lisa's medical records to her attorney. Singing River denies any allegation of fraud or concealment and asserts that this issue is procedurally barred, because the Barneses failed to raise the argument at trial. *Educational Placement Services*, 487 So. 2d at 1320. As a result, this issue is procedurally barred.

¶22. Aside from the procedural bar, we find that the Barneses' argument is unsupported by the record. In analyzing the Barneses' claim that the statute of limitations is tolled as a result of fraud, this Court must address two questions: 1) whether there is a genuine issue of material fact as to whether Singing River fraudulently concealed Lisa's medical records, and 2) "whether the fraud remained undiscoverable by

reasonable diligence for such a long time that the date on which [the Barneses] filed their complaint fell within the tolled limitations period." ***Stevens v. Lake***, 615 So. 2d 1177, 1181 (Miss. 1993).

¶23. The facts asserted in the pleadings are that Mr. Denham made his first request for Lisa's medical records on November 13, 1995. Then, when he did not receive them by January 29, 1996, Mr. Denham contacted the hospital and was informed of the fee for copying the file. After Mr. Denham paid the copying fee, Singing River delivered Lisa's medical records sometime in mid-February of 1996. Under these facts, we cannot find that Singing River fraudulently concealed Lisa's medical records. Even if Singing River intentionally delayed delivery of the medical records in order to postpone Mr. Denham's progress in filing the Barneses' complaint, any such delay was not "undiscoverable by reasonable diligence." Part of the delay must be attributed to Mr. Denham's failure to follow up on his initial request to obtain the records.

## IV.

## WHETHER IMMUNITY IS WAIVED TO THE EXTENT OF EXCESS LIABILITY INSURANCE CARRIED BY THE DEFENDANT.

¶24. The Barneses argue that immunity in this case is waived to the extent of the excess liability insurance carried by Singing River. Section 11-46-17(4) of the Mississippi Tort Claims Act provides:

> Any governmental entity of the state may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone in excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability insurance carried.

Miss. Code Ann. § 11-46-17(4) (Supp. 1998). Under § 11-46-15(a), the liability limit for Lisa's claim against Singing River arising from her hospitalization in September of 1995, would be $50,000. Miss. Code Ann. § 11-46-15(a) (Supp. 1998). Mr. Denham asserted at the hearing that Singing River was protected by a $250,000 liability insurance policy at the time of Lisa's injuries. Attorneys for Singing River stipulated that there was a liability insurance policy in effect at the time of Lisa's treatment, but did not reveal the amount of coverage. On remand to the trial court, discovery should be conducted as to the amount of excess coverage available in this case. Singing River's immunity with regard to the amount of coverage in excess of $50,000 is waived under the terms of the governing statute. Should the Barneses succeed in their claim against Singing River, the additional liability insurance coverage will be available to them as part of their potential recovery, regardless of any other immunity afforded Singing River in this case. ***Hord v. Yazoo***, 702 So. 2d 121, 124 (Miss. 1997) (Lee, C.J., concurring joined by Pittman, Banks, McRae and Roberts, Jr., J.J.).

## CONCLUSION

¶25. The Barneses filed their complaint within one year of their discovery of Singing River's alleged negligence in this case. Because we find that the statute of limitations did not begin to run until such reasonable discovery, the trial court erred in awarding Singing River summary judgment based upon expiration of the statute of limitations. Therefore we must reverse the judgment below and remand this case to the Jackson County Circuit Court for further proceedings consistent with this opinion.

¶26. **REVERSED AND REMANDED**.

**PITTMAN, P.J., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.
PRATHER, C.J., AND McRAE, J., CONCUR IN RESULT ONLY.**