# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00730-SCT

*CRAIG COREY, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF INDA LEWIS, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF INDA LEWIS, DECEASED*

*v.*

*DR. TOM SKELTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/19/2001 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CYNTHIA A. LANGSTON |
| | JOHN D. GIDDENS |
| ATTORNEYS FOR APPELLEE: | JOHN MICHAEL COLEMAN |
| | JOSEPH L. McNAMARA |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 01/09/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.

### CARLSON, JUSTICE, FOR THE COURT:

¶1.     In this medical malpractice case arising under the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002), Craig Corey appeals the trial court's order granting summary judgment in favor of Dr. Tom Skelton based upon his employment status at the University of Mississippi Medical Center ("UMMC"). Finding the trial court correctly held Dr. Skelton was immune from liability, we affirm the grant of summary judgment.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Inda Lewis was admitted to UMMC on October 22, 1996, for treatment of pain related to her previously diagnosed sickle cell anemia. Lewis died the next day. Dr. Tom Skelton was the attending physician when Lewis was admitted to UMMC. An autopsy performed at the request of the family revealed elevated levels of the drugs Demerol and Meperdine Metabolite in Lewis's blood.

¶3.     On January 26, 1998, Corey filed a complaint against The University Hospitals and Clinics, UMMC and Dr. Skelton alleging that Lewis's death was a direct result of the substandard care received from Dr. Skelton and UMMC employees. The complaint specifically alleged Dr. Skelton was not an employee of The University Hospitals and Clinics, or UMMC. Corey also alleged The University Hospitals and Clinics and UMMC were vicariously liable for any and all negligent acts and/or omissions of their employees who delivered negligent care to Lewis. An amended complaint was filed on October 13, 1998, adding Scott Lane, M. D., Donna K. Cassell, M.D., Stephanie Powell, M.D. and John and Jane Doe, M.D., as defendants.

¶4.     On May 12, 2000, Dr. Skelton filed a motion for summary judgment. In support of his motion, Dr. Skelton attached his personal affidavit, the affidavit of Paul Trussell, director of human resources, his employment contract and his sworn responses to the interrogatories propounded to him by Corey. The attachments alleged Dr. Skelton was an employee of UMMC who was at all times acting in the course and scope of his employment. Corey responded to this motion on October 16, 2000. This matter came on for hearing before the Circuit Court of the First Judicial District of Hinds County, Honorable James E. Graves, Jr., presiding, in October 2000. The matter was reset for hearing in order to allow the parties an opportunity to develop the record on the issue of the employee status of Dr. Skelton.

¶5.    During the extended discovery period, Dr. Skelton supplemented his motion for summary judgment with his deposition testimony and an additional affidavit. Corey produced no additional evidence. A hearing was held on Dr. Skelton's motion for summary judgment on March 5, 2001. On March 19, 2001, the trial court granted Dr. Skelton's motion for summary judgment and certified that judgment as final under Miss. R. Civ. P. 54(b). Judge Graves found Dr. Skelton was an employee of UMMC, rather than an independent contractor. He also found that according to *Knight v. McKee*, 781 So. 2d 121, 123 (Miss. 2001). Dr. Skelton did not waive his immunity by purchasing liability insurance.

¶6.    Corey raises the following three issues before this Court:

**I.     WHETHER THE TRIAL COURT ERRED IN FINDING THAT DR. SKELTON WAS AN EMPLOYEE OF THE UMMC AND WAS ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT DURING THE COURSE OF HIS TREATMENT OF INDA LEWIS.**

**II.    WHETHER THE TRIAL COURT ERRED IN FINDING THAT INDA LEWIS'S ESTATE WAS NOT ENTITLED TO COMPENSATION FOR HER WRONGFUL DEATH FROM DR. SKELTON'S MEDICAL MALPRACTICE POLICY.**

**III.   WHETHER IT WAS UNJUST, DISCRIMINATORY AND/OR CONSTITUTIONAL TO DENY INDA LEWIS'S ESTATE COMPENSATION FROM DR. SKELTON'S MEDICAL MALPRACTICE INSURANCE FOR HER WRONGFUL DEATH.**

## DISCUSSION

¶7.    For a summary judgment motion to be granted, there must exist no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c). The standard of review of a trial court's grant of a motion for summary judgment is de novo. *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 63 (Miss. 1988). The burden of demonstrating that there is no

3

genuine issue of material fact falls upon the party requesting the summary judgment. *Id.* at 63-64. The court must carefully review all evidentiary matters before it; admissions in pleadings, answers to interrogatories, depositions, affidavits, etc., in the light most favorable to the party against whom the motion for summary judgment is made. *McFadden v. State*, 542 So.2d 871, 874 (Miss. 1989).

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed.

*Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000) (citing *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362 (Miss. 1983)).

**I.    WHETHER THE TRIAL COURT ERRED IN FINDING THAT DR. SKELTON WAS AN EMPLOYEE OF THE UMMC AND WAS ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT DURING THE COURSE OF HIS TREATMENT OF INDA LEWIS.**

¶8.    Corey argues the *Miller* factors clearly weigh in favor of finding that Dr. Skelton was an independent contractor. Dr. Skelton states the facts of the case sub judice are almost identical to the facts presented in *Sullivan* where this Court reversed a jury verdict and determined two doctors were employees of UMMC for purposes of liability under the Tort Claims Act. *Sullivan v. Washington*, 768 So. 2d 881, 886 (Miss. 2000).

¶9.    Based on a voluminous record supplemented by Dr. Skelton and a hearing on the motion for summary judgment, the trial court determined Dr. Skelton was an employee of UMMC and thus was

4

immune from liability. Pursuant to the five-part test enumerated in *Miller*, a brief analysis will be conducted as to the employment status of Dr. Skelton.[1]

¶10.    Both parties agree the nature of the function performed by Dr. Skelton was supervisory. Like the physician in *Sullivan*, Dr. Skelton was assigned to Lewis; Lewis did not choose Dr. Skelton as her physician. Dr. Skelton did not have a private-patient relationship with Lewis. Dr. Skelton was the attending physician on call the day Lewis was admitted to the hospital. His role was to supervise the overall care of Lewis and all other admitted patients and to teach and advise the residents and interns.

¶11.    The role of the faculty physician is to supervise the progress of residents and interns, provide the necessary training and to maintain a practical and educational environment. This Court has held the state has a compelling interest in maintaining such an educational environment provided by Dr. Skelton and all its teaching physicians. *Sullivan*, 768 So. 2d at 885.

¶12.    The direction and control UMMC maintains over its employees is great. Each month meetings are held outlining the training programs for each department. UMMC controls all scheduling assignments and implements policies and procedures which must be followed by all employees. Both parties agree that Dr. Skelton, like the doctors in *Sullivan*, was assigned the patient in question and was responsible for supervising another's treatment of that patient. As stated above, Dr. Skelton was the admitting physician assigned to the hospital on the day Lewis was admitted and was not called to the emergency room upon

---

[1] In *Miller*, we outlined the test to determine whether state employed physicians should be granted immunity: "1. the nature of the function performed by the employee; 2. the extent of the state's interest and involvement in the function; 3. the degree of control and direction exercised by the state over the employee; 4. whether the act complained of involved the use of judgment and discretion; 5. whether the physician receives compensation, either directly or indirectly, from the patient for professional services rendered." 762 So.2d at 310.

Lewis's admittance. He did not come in contact with Lewis until his rounds the next morning after she had been admitted to the hospital.

¶13. Judgment and discretion will always play a part in a supervisory role. Regarding the fourth factor of judgment and discretion, this Court has recently held:

> Virtually every act performed by a person involves the exercise of some discretion. Obviously, a professional necessarily retains a significant amount of discretion in the operation of his profession. This is especially true of physicians who are bound to exercise their judgment without interference from others. The Hippocratic Oath requires that the physician " . . . use [his] power to help the sick to the best of [his] ability and judgment." Section 6 of the American Medical Association's "Principles of Medical Ethics" states, "A physician should not dispose of his services under terms or conditions which tend to interfere with or impede the free and complete exercise of his medical judgment and skill. . . . "

*Sullivan*, 768 So. 2d at 885. Although Dr. Skelton admitted to exercising his personal judgment and discretion while performing his role as supervisor, this factor alone is not determinative.

¶14. Lewis was a Medicaid patient. Accordingly, this Court has held that doctors do not receive direct payment from Medicaid patients. *Sullivan*, 768 So. 2d at 885. Dr. Skelton stated that Lewis, like all of his patients as required by UMMC, was billed through the central billing office of the department of internal medicine. The money then becomes intermingled with the other revenues for the department.

¶15. The facts of this case and the facts of *Sullivan* are similar. Based on the supplemented record and the above *Miller* analysis, we affirm the ruling of the trial court granting summary judgment to Dr. Skelton on the grounds that he is an employee of UMMC and, thus, immune from liability.

## II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT INDA LEWIS'S ESTATE WAS NOT ENTITLED TO COMPENSATION FOR HER WRONGFUL DEATH FROM DR. SKELTON'S MEDICAL MALPRACTICE POLICY.

¶16. Recently this Court held:

The fact that the two physicians have personally acquired professional liability insurance is irrelevant to the inquiry as to whether a state employee enjoys immunity under the MTCA. In a recent case, *Maxwell v. Jackson County*, 768 So.2d 900 (Miss. 2000), we held that a county did not waive its immunity protections under the MTCA when it purchased liability insurance in excess of the limits imposed by the MTCA. We now extend this holding to apply to state employees also. *Finally, the MTCA contains no provision allowing for the waiver of a state employee's immunity because of the existence of professional liability insurance.*

*Knight v. McKee*, 781 So. 2d 121, 123 (Miss. 2001) (emphasis added). Corey argues *Knight* is distinguishable from the case sub judice because the two physicians personally acquired the insurance in *Knight* while in the case sub judice the insurance was a requirement of employment. However, this Court in *Knight* did not make a distinction as to the purchaser of the insurance. This Court clearly stated the *existence* of professional liability insurance did not waive a state employee's immunity. We find this issue to be without merit.

### III.  WHETHER IT WAS UNJUST, DISCRIMINATORY AND/OR CONSTITUTIONAL TO DENY INDA LEWIS'S ESTATE COMPENSATION FROM DR. SKELTON'S MEDICAL MALPRACTICE INSURANCE FOR HER WRONGFUL DEATH.

¶17.    In *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199 (Miss. 1999), this Court stated as follows:

> [T]he constitutionality issue is barred, because it was not raised in the trial court and because the Attorney General's Office was not properly notified. "We accept without hesitation the ordinarily sound principle that this Court sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court. We depart from this premise only in unusual circumstances." *Educational Placement Services v. Wilson*, 487 So.2d 1316, 1320 (Miss. 1986). "The law has been well settled that the constitutionality of a statute will not be considered unless the point is specifically pleaded." *Smith v. Fluor Corp.*, 514 So.2d 1227, 1232 (Miss. 1987). Furthermore, Rule 24(d) of the Mississippi Rules of Civil Procedure requires that proper notice be given to the Attorney General when the constitutionality of a statute is challenged "to afford him an opportunity to intervene and argue the question of constitutionality." Miss. R. Civ. P. 24(d). Rule 44(a) of the Mississippi Rules of Appellate Procedure similarly requires service of any appellate brief

challenging the validity of a statute "on the Attorney General, the city attorney, or other chief legal officer of the governmental body involved." M.R.A.P. 44(a). "Except by special order of the court to which the case is assigned, in the absence of such notice neither the Supreme Court nor the Court of Appeals will decide the question until the notice and right to respond contemplated by this rule has been given to the appropriate governmental body." M.R.A.P. 44(c). The Barneses' failure to raise the issue of the constitutionality of § 11-46-11(3) at trial or to notify the Attorney General's Office of their challenge of the statute results in the procedural bar on this issue.

*Barnes*, 733 So.2d at 202-03. Similarly, Corey has failed to comply with Miss. R. Civ. P. 24(d) or M.R.A.P. 44. Therefore, Corey's failure to raise the issue of the constitutionality of § 11-46-7(2) before the trial court or to notify the Attorney General's office of his challenge of the statute results in the procedural bar on this issue.

## CONCLUSION

¶18.     The trial court was correct in its finding that Dr. Skelton was an employee of UMMC and, thus, immune from all liability. Dr. Skelton did not waive that immunity by purchasing professional liability insurance above the amount allowed for in the Act. Finally, Corey's claim that the Act is discriminatory or unconstitutional is procedurally barred. Therefore, this Court affirms the trial court's grant of summary judgment in favor of Dr. Skelton.

¶19.     **AFFIRMED.**

        **PITTMAN, C.J., SMITH, P.J., WALLER AND COBB, JJ., CONCUR.  EASLEY, J., CONCURS IN PART.  McRAE, P.J., AND DIAZ, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.  GRAVES, J., NOT PARTICIPATING.**