# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-01091-SCT

*PPG ARCHITECTURAL FINISHES, INC.*

*v.*

*MELISSA LOWERY AND ANIMAL EMERGENCY CLINIC, P. A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2004 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARK W. GARRIGA |
| ATTORNEYS FOR APPELLEES: | SHEILA M. BOSSIER |
| | RICHARD ARTHUR FREESE |
| | ALEXANDRA FRANCOISE MARKOV |
| | BARRY DOUGLAS HASSELL |
| | MICHAEL WAYNE BAXTER |
| | ROBERT LOUIS GOZA |
| NATURE OF THE CASE: | CIVIL - TORT |
| DISPOSITION: | REVERSED AND RENDERED - 08/18/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., DICKINSON AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     On June 12, 2000, Melissa Lowery filed suit in Madison County Circuit Court against Animal Emergency Clinic, P.A. (AEC), her former employer, and Aaron D. Massey Painting (Massey), a/k/a Madison Paints, Inc.   In the complaint Lowery alleged that AEC negligently required her to work in an unsafe environment and that Massey negligently used a type of paint

that emitted extraordinarily dangerous fumes and failed to warn Lowery of the consequences, possible side effects and long term damages which could result from exposure.

¶2. After losing consciousness, Lowery was treated at St. Dominic Hospital where she informed the medical staff about her exposure to the paint fumes. However, it was not until several years later that Lowery received definitive medical confirmation that her illness had been caused by the exposure to paint fumes. Lowery then filed an amended complaint joining PPG Architectural Finishes, Inc. (PPG) alleging products liability. PPG filed a motion for summary judgment arguing that Lowery's claims were barred by the statute of limitations. The circuit court denied PPG's summary judgment motion but granted its motion for certification of interlocutory appeal and stay of the proceedings. In turn, we granted PPG permission to bring this appeal. *See* M.R.A.P 5.

¶3. We find that the trial court erred as Lowery and the clinic clearly knew or reasonably should have known of her exposure to paint fumes on the very night it occurred. The statute of limitations barred Lowery's action against PPG and summary judgment for PPG was appropriate. We, therefore, reverse and render.

### FACTS AND PROCEDURAL HISTORY

¶4. Melissa Lowery reported to work at the Animal Emergency Clinic in Jackson, Mississippi, on the night of October 1, 1999. Immediately upon entering the Clinic, Lowery noticed wet paint throughout the building and was aware that the Clinic was to be painted that week. According to Lowery, the strong odor of the paint immediately caused her to become concerned so she telephoned her boss at home. Lowery claims that after three hours of

2

inhaling paint fumes she became disoriented, sick and began to have trouble with her memory. Furthermore, the clinic's dog developed bloodshot eyes and began vomiting bile.

¶5.     Lowery eventually went to the attic to retrieve a label from one of the paint cans and identified it as "Porter Glyptex Enamel" and telephoned the Mississippi Regional Poison Control Center to report the problems they were experiencing. Lowery's symptoms persisted, and she became sick and passed-out from the exposure. She was taken to the Emergency Room at St. Dominic Hospital where she complained of headache, nausea and throat irritation from exposure to paint fumes. The attending physician's clinical impression at the time was chemical exposure. Lowery returned to the emergency room three days later, and the attending physician's impression was then toxin exposure. Lowery visited several doctors complaining that she was experiencing neurological problems severe enough to hamper her ability to study, write or take notes in her college classes. Her list of symptoms included: dizziness, confusion, short term memory loss, headaches, seizures, disorientation while driving, vertigo during sex, and tachycardia and shortness of breath on exertion. The doctor concluded that Lowery was suffering from cerebral symptoms as a result from exposure to toxic fumes.

¶6.     Lowery filed a claim for disability benefits under the Social Security Act in December of 1999. On June 12, 2000, Lowery filed this suit in Madison County Circuit Court claiming permanent brain injury as the result from her October 1, 1999, incident. Lowery named her employer, Animal Emergency Clinic, P.A. ("AEC" or "Clinic"), and Aaron Massey Painting (Massey), a painting contractor, as defendants. Over the course of three and a half years the parties engaged in discovery and had set a trial date for December 2, 2003. On October 27, 2003, the trial court entered an order allowing Lowery to file an amended complaint. On

3

November 13, 2003, Lowery filed an amended complaint naming PPG Architectural Finishes, Inc. (PPG) as a defendant. AEC immediately filed a cross-claim against PPG for indemnity and contribution. PPG filed an answer asserting the statute of limitations as an affirmative defense.

¶7.     PPG's motion for summary judgment was denied by the trial court. The trial judge concluded that there was a genuine issue of fact as to when Lowery "knew" that she had permanent brain damage. PPG raised the following issues on appeal:

1.     IS THE DISCOVERY RULE PROPERLY APPLIED TO A CAUSE OF ACTION THAT DOES NOT INVOLVE LATENT INJURY OR DISEASE?

2.     IS "DEFINITIVE MEDICAL CONFIRMATION" REQUIRED BEFORE A PERSONAL INJURY CAUSE OF ACTION ACCRUES?

3.     DOES THE CIRCUIT COURT'S RULING EFFECTIVELY SPLIT THE PLAINTIFF'S CAUSE OF ACTION?

4.     CAN A VALID CROSS-CLAIM FOR INDEMNITY EXIST IF THE PLAINTIFF'S STATUTE OF LIMITATIONS HAS RUN AGAINST THE CROSS-DEFENDANT AND THE CROSS-PLAINTIFF IS CHARGED WITH ACTIVE CONDUCT?

## ANALYSIS

¶8.     This Court has consistently held that review for summary judgment is de novo. *Hurdle v. Holloway*, 848 So.2d 183, 185 (Miss. 2003); *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000); *Crain v. Cleveland Lodge 1532*, 641 So.2d 1186, 1188 (Miss. 1994). A summary judgment motion is only properly granted when no genuine issue of material fact exists. *Id.* at 304; Miss. R. Civ. P. 56(c). The moving party has the burden of demonstrating that no genuine issue of material fact exists within the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Id.*; *see also Davis v.*

4

*Hoss*, 869 So.2d 397, 401 (Miss. 2004) (noting that the court should review all evidence available to it when making its decision); *Anglado v. Leaf Forest Prods., Inc.*, 716 So.2d 543, 547 (Miss. 1998).

### I & II. WHETHER THE DISCOVERY RULE IS PROPERLY APPLIED IN A CAUSE OF ACTION NOT INVOLVING LATENT INJURY OR DISEASE AND WHETHER A DEFINITE DIAGNOSIS IS REQUIRED BEFORE A PERSONAL INJURY CAUSE OF ACTION ACCRUES.

### A. Historical Review of the Discovery Rule

¶9.    Miss. Code Ann. § 15-1-49(2) (Rev. 2002) provides for a special exception to the standard three-year statute of limitations for "latent injury or disease." In its most simplistic form, if aggrieved persons do not know of their injury the statute of limitation does not begin running until they "can reasonably be held to have knowledge of the injury or disease." *Owens-Illinois, Inc. v. Edwards*, 573 So.2d 704, 709, 1052-53 (Miss. 1990). Early on this Court explained the existence of the "discovery rule" in medical malpractice suits but did not fully expound upon its applicability in other areas of law. *Smith v. Sanders*, 485 So.2d 1051 (Miss. 1986). In *Edwards* this Court promulgated that the "discovery rule exists in conjunction with § 15-1-49 (1972) in the case of negligence or products liability cause of action involving latent disease." *Edwards*, 573 So.2d at 709. This Court reasoned that it would be illogical to prevent plaintiffs from obtaining relief if their injuries were not discoverable until after the statute of limitations had passed. *Id*.

¶10.    The discovery rule's application has been greatly expanded over time. *See Barnes v. Singing River Hosp. Sys.*, 733 So.2d 199 (Miss. 1999) (Mississippi Tort Claims Act); *Georgia Pacific Corp. v. Taplin*, 586 So.2d 823 (Miss. 1991) (workers compensation);

5

*Staheli v. Smith*, 548 So.2d 1299 (Miss. 1989) (defamation). At issue in all cases however, is *when* the plaintiff discovers their injury or disease. *Sweeney v. Preston*, 642 So.2d 332, 334 (Miss. 1994) (quoting *Williams v. Kilgore*, 618 So.2d 51, 55 (Miss. 1992)). In *Sweeney* this Court noted that, "knowledge that there exists a causal relationship between the negligent act and the injury or disease complained of *is essential* because 'it is well-established that prescription does not run against one who has neither actual nor constructive notice of the facts that would entitle him to bring an action.'" *Id*. (emphasis added). Whether the plaintiff *knew* about the injury has typically been reserved as a jury question. *Barnes*, 733 So.2d at 205; *Edwards*, 573 So.2d at 709.

¶11. This Court has cautioned that the discovery rule should only be applied in "limited circumstances in [] negligence and products liability case[s] involving latent injury." *Schiro v. Am. Tobacco Co.*, 611 So.2d 962, 964 (Miss. 1992); *Edwards*, 573 So.2d at 707. Implicitly then, this Court has held that if a latent injury is *not* present the discovery rule would *not* apply. *Chamberlain v. City of Hernando*, 716 So.2d 596, 602 (Miss. 1998).

### B. Latent Injury

¶12. A latent injury is defined as one where the "plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question...[or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 198 (Miss. 1999) (citing

6

*Staheli*, 548 So.2d at 1303; *Smith v. Sneed*, 638 So.2d 1252, 1257 (Miss. 1994)). Herein lies the conflict presented sub judice.

¶13.    It is well established that this Court must review a statute through common use of words and meanings. *Perkins v. State*, 863 So.2d 47 (Miss. 2003) (citing *Cassibry v. State*, 404 So.2d 1360, 1368 (Miss. 1981) (following *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed.2d 1498 (1957)). Miss. Code Ann. § 15-1-49(2) states "[i]n actions for which no other period of limitation is prescribed and which involved latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2).

¶14.    A review of this Court's prior rulings also provides insight into the statute's interpretation. The term "latent injury" while seemingly vague does have definitive boundaries. For an injury to be latent it must be undiscoverable by reasonable methods. *Donald*, 735 So.2d at 198. For instance this Court has noted that some plaintiffs may require access to medical records to discover the injury. *Sarris v. Smith*, 782 So.2d 721, 725 (Miss. 2001). While others might gain enough actual knowledge through personal observation or experience. *Robinson v. Singing River Hosp.*, 733 So.2d 204, 208 (Miss. 1999). Some injuries may be indiscernible until a medical expert notifies the plaintiff of possible negligence. *Barnes v. Singing River Hosp. Sys.*, 732 So.2d at 206. Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonable should have known that an injury existed. *Sweeney v. Preston*, 642 So.2d at 336. ¶15.    The facts surrounding Lowery's exposure for this interlocutory appeal are not in dispute. Rather, the question is

7

whether Lowery's own suspicions and actions thereon were enough to vest the right to a cause of action against PPG. If Lowery's cause of action accrued when she originally knew or suspected, then the statute of limitations began running upon the occurrence of her injury.

¶16. By her own admission, Lowery knew when, how and by whom she had been injured on the night of her acute exposure. The Court must consider Lowery's actions in determining whether she "knew" or "reasonably should have known" that she had suffered an injury. For instance, seeking medical attention for side effects or symptoms confirms that Lowery "knew" she was injured. In *Powe,* this Court found that a plaintiff's receipt of medical treatment for two years demonstrated that he knew or reasonably should have known about his injuries. *Powe v. Byrd*, 892 So.2d 223, 227-28 (Miss. 2004). Moreover, in *Powe* this Court specifically rejected his claim that the statute of limitations began running when he received an expert opinion because Powe had known of his injury as evinced by the two years of prior medical treatment for the injury. *Id*. While *Powe* is a medical malpractice claim and subject to different statutes with different requirements the holding is still particularly relevant to the case sub judice.

¶17. Several recent decisions further erode the level of knowledge required to vest a cause of action. This Court commented that a plaintiff "knew or reasonably should have known that some negligent conduct had occurred, even if they *did not know with certainty* that the conduct was negligent as a matter of law." *Wayne Gen. Hosp. v. Hayes*, 868 So.2d 997, 1000 (Miss. 2004) (emphasis added); *Sarris v. Smith*, 782 So.2d at 725 (holding that a plaintiff need not know with absolute certainty that conduct was legally negligent). This Court has also explained that the "focus is on the time that the patient discovers, or should have discovered

8

by the exercise of reasonable diligence, that he *probably* has an actionable injury." ***Wright v. Quensel***, 876 So.2d 362, 366 (Miss. 2004) (quoting ***Smith v. Sanders***, 485 So.2d 1051, 1052 (Miss. 1986)) (emphasis added).

¶18.    Considering Lowery's actions through the lense of this Court's recent rulings we hold that Lowery "knew" of her injury on October 1, 1999.  Moreover, using the standards outlined in ***Hayes***, ***Quensel*** and ***Sanders***, Lowery did not require absolute certainty nor an expert opinion to vest the right to a cause of action under this state's products liability statute.    See, e.g. ***Quensel***, 876 So.2d at 366; ***Hayes***, 868 So.2d at 1000; ***Sanders***, 485 So.2d at 1052.

¶19.    Lowery's initial call to the Regional Poison Control Center and her subsequent visits to the emergency room identified the source of her exposure as "Porter Glyptex Enamel Paint."  Sufficient evidence exists, undisputed or admitted at present, that the AEC was painted with Porter Glyptex Enamel Paint.  Lowery suffered immediate complications as a result of her acute exposure requiring her to go to an emergency room for treatment.  Medical professionals, during the course of Lowery's treatment, listed exposure to Porter Glyptex Enamel Paint as Lowery's alleged cause of injury.  PPG admits that Porter Glyptex Enamel Paint contains a warning which reads, "Vapor harmful, may affect the brain or nervous system...Do not breath vapors or spray mist." We conclude that the trial court erred, and we must reverse and render on this issue

¶20.    Because issues I and II are controlling and decided in PPG's favor, the other issues are moot and will not be addressed.

## CONCLUSION

9

¶21. Based upon our holdings in *Hayes, Quensel* and *Sanders*, we conclude that the trial court erred. Therefore, we reverse the trial court's judgment denying PPG's motion for summary judgment and we render judgment in favor of PPG.

¶22. **REVERSED AND RENDERED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**