# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-01001-SCT

*LULA McLEOD AND JOHN ERIC McLEOD*

*v.*

*TERRENCE J. MILLETTE, M.D. AND SINGING RIVER HEALTH SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2019 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| TRIAL COURT ATTORNEYS: | TIM C. HOLLEMAN |
| | WALTER C. MORRISON, IV |
| | JAMES EVERETT LAMBERT, III |
| | BRETT K. WILLIAMS |
| | A. KELLY SESSOMS, III |
| | JASON R. SCHEIDERER |
| | JAMES H. HEIDELBERG |
| | STEPHEN WALKER BURROW |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | WALTER C. MORRISON, IV |
| ATTORNEYS FOR APPELLEES: | BRETT K. WILLIAMS |
| | A. KELLY SESSOMS, III |
| | JAMES E. LAMBERT, III |
| | JASON R. SCHEIDERER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 07/02/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.

## GRIFFIS, JUSTICE, FOR THE COURT:

¶1. Lula McLeod and her husband, John McLeod, appeal the circuit court's dismissal of their medical-negligence case. Because the record reflects that the case was timely filed within the applicable statute of limitations, the circuit court's judgment should be reversed

and remanded.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2010, Lula was diagnosed with multiple sclerosis by Dr. Terrence J. Millette, a board-certified neurologist. In October 2011, Dr. Millette became an employee of Singing River Health System, a community hospital in Jackson County. Over the next several years, Lula was treated by Dr. Millette for multiple sclerosis.

¶3.     In May 2016, three medical doctors expressed in writing to Singing River their "concern regarding a pattern of diagnosis and/or treatment that may be inappropriate." The doctors, who were employees of Singing River, acknowledged that "approaches to diagnoses and treatment may differ between individuals or practices" but stated that their "concern [went] beyond diagnostic error or uncertainty that [they] fe[lt] would be expected in the routine practice of medicine/neurology." The doctors included a sampling of patient medical records for Singing River to review. The doctors emphasized that they were not accusing any individual of wrongdoing and were not requesting that any action be taken in response to their communication.

¶4.     In November 2016, Singing River sent a letter to all of Dr. Millette's patients and advised that Dr. Millette "would no longer base his practice at Singing River." The letter, dated November 15, 2016, read as follows:

> As a valued patient of Singing River Health System, your health and well-being - and that of all our patients - are our highest priority. As such, we want to share with you that Dr. Terry Millette will no longer be practicing at the Neurology Associates Clinic at Singing River Medical Park effective

2

immediately.

We apologize for any concern that this development may cause you. Our commitment to you as our patient remains steadfast, and your continued care is important to us. For this reason, we want to share with you the circumstances surrounding Dr. Millette's departure and our plan for moving forward with our patients.

Consistent with best medical practice, Singing River has internal processes to review the quality of care that our patients receive. Recently, some questions were raised about how Dr. Millette diagnoses and treats patients with multiple sclerosis. As a result, we immediately began a review of Dr. Millette's medical activity. During the course of this ongoing review, the decision was made that Dr. Millette would no longer base his practice at Singing River.

We recognize that competent medical professionals often have differing opinions, especially when it involves complex neurological conditions. Given the questions that have been raised about Dr. Millette's medical practices, we would like to work with you to obtain a re-evaluation of your diagnosis and treatment plan with another doctor.

As a next step, we ask you or your caregiver to call us at . . . . You will be able to reach a dedicated team of Singing River employees at that number seven a days a week from 6:00 AM to 10:00 PM.

We are working closely with regional and national experts in neurology to assist you in the best manner possible during this transition to a new doctor. We are here to help you during every step of this process and, when you call, we can discuss your options for a re-evaluation of your care as well [as] any questions you may have.

Singing River is committed to providing you the highest-quality, most compassionate, comprehensive care possible, and we apologize again for the concern this situation may cause you. We look forward to speaking with you soon.

Singing River also released a statement to the media that was similar to the letter.

¶5.     Singing River prepared an internal memorandum regarding "Inbound Calls from MS

Patients" in order to assist Singing River's "Patient Hotline Staff" in its response to patient phone calls. The memo explained that the patients "will have recently received a letter . . . informing them that Dr. Millette is no longer practicing at [Singing River]" and "may be experiencing a variety of emotions and will undoubtedly have many questions both about what happened to Dr. Millette and what this means for their health and ongoing treatment." The memo provided "a list of potential questions [the] patients may ask, as well as answers for these questions . . . ." The potential questions and recommended answers included the following:

> Q: Should I keep taking the medications prescribed by Dr. Millette?
> A: That is a question for one of our doctors. I will have a member of our clinic staff contact you later today to discuss your prescription and the plan for your ongoing treatment.
>
> Q: Does this mean that I don't have MS?
> A: Only a physician can make a determination about your health. We have a number of options for a new doctor, either here at our clinic or with other providers in the region. (SCHEDULE APPOINTMENT)
>
> Q: What are the potential impacts if I have been misdiagnosed or mistreated?
> A: Only a physician can make a determination about your health. We will help you with all of the arrangements for this re-evaluation. We have a number of options for a new doctor, either here at our clinic or with other providers in the region. (SCHEDULE APPOINTMENT)
>
> Q: Do I need an attorney?
> A: I am not in a position to offer that kind of advice as our first priority is your health and well being. We have a number of options for a new doctor, either here at out clinic or with other providers in the region. (SCHEDULE APPOINTMENT)

¶6.     After she received the letter, Lula worked with Singing River to obtain a reevaluation.

4

Lula was initially referred to Dr. Chelsea Grow, a neurologist in Gulfport. Lula met with Dr. Grow on two occasions beginning in January 2017, but Dr. Grow was unable to provide definitive answers regarding Lula's condition. As a result, Lula was referred to Dr. Christopher Karcher, a neurologist at Singing River.[1] Lula first met with Dr. Karcher on January 30, 2017. According to Lula, Dr. Karcher instructed her to stop taking her multiple sclerosis medications, and he recommended that she undergo lumbar puncture. Lula underwent lumbar puncture on March 28, 2017. On June 7, 2017, Lula met with Dr. Karcher, who advised that she did not have multiple sclerosis.

¶7. On January 30, 2018, Lula and John sent Dr. Millette and Singing River a presuit notice of claim as required by Mississippi Code Section 11-46-11(1) (Rev. 2019).[2] Then, on May 29, 2018, Lula and John filed a complaint against Dr. Millette and Singing River alleging medical negligence. Specifically, Lula and John alleged that Dr. Millette was negligent and breached the applicable standard of care "by misdiagnosing Lula . . . with multiple sclerosis and administering treatment to her for many years." Lula sought damages for medical expenses, physical pain and suffering, mental anguish, and loss of enjoyment of life. John sought damages for loss of consortium. Lula and John later filed an amended

---

[1] Dr. Karcher was one of the three medical doctors who, in May 2016, expressed in writing to Singing River their concerns regarding Dr. Millette.

[2] In *University of Mississippi Medical Center v. Robinson*, 876 So. 2d 337, 341 (Miss. 2004), this Court concluded that "[t]he March 2002 amendment to [Mississippi Code Section] 11-46-11(4) [wa]s unconstitutional to the extent that it ma[de] the savings clause applicable to all claims since April 1, 1993." Because Section 11-46-11(4) is not at issue in this case, the conclusion set forth in *Robinson* is inapplicable.

complaint on September 12, 2018, and asserted claims of vicarious liability and independent negligence against Singing River.

¶8. Singing River filed a motion to dismiss Lula and John's complaint. In its motion, Singing River asserted that Lula knew of her potential claims against Singing River no later than November 2016 when she received the letter. Singing River argued that because Lula did not serve her notice of claim until January 2018, more than one year later, her claims were time barred by the applicable statute of limitations.

¶9. After a hearing, the circuit court granted Singing River's motion and dismissed Lula and John's complaint with prejudice. The circuit court found that the statute of limitations began to run on November 16, 2016, when Lula received Singing River's letter. As a result, the circuit court concluded that Lula and John were required to give notice of her claim on or before November 16, 2017. Because Lula and John failed to give timely notice, the circuit court found that the claims were barred by the one-year statute of limitations under Mississippi Code Section 11-46-11(3)(a) (Rev. 2019).

¶10. Lula and John timely appealed. On appeal, they argue the circuit court erroneously found that Lula's claims were barred by the statute of limitations.

¶11. By agreement, Lula and John's claims against Dr. Millette for any alleged personal liability before his employment with Singing River were dismissed with prejudice. Additionally, the parties stipulated that Dr. Millette was immune from personal liability for any acts or claims while employed by Singing River under Mississippi Code Section 11-46-

6

7(2) (Rev. 2019) and that Dr. Millette was not a necessary party to the action on the remaining claims against Singing River and should therefore be dismissed without prejudice as to the those claims.

## STANDARD OF REVIEW

¶12.    "The 'application of a statute of limitations is a question of law.'" ***Wayne Gen. Hosp. v. Hayes***, 868 So. 2d 997, 1000 (Miss. 2004) (quoting ***Sarris v. Smith***, 782 So. 2d 721, 723 (Miss. 2001)).  "This Court applies [a] de novo standard of review when deciding issues of law." ***Id.*** (citing ***ABC Mfg. Corp. v. Doyle***, 749 So. 2d 43, 45 (Miss. 1999)).

## DISCUSSION

¶13.    The issue before this Court is whether the circuit court erroneously found that the one-year statute of limitations began to run on November 16, 2016, when Lula received Singing River's letter.

¶14.    It is undisputed that Singing River is a governmental entity and therefore entitled to the protections under the Mississippi Tort Claims Act (MTCA).  "[A]t least ninety (90) days before instituting suit, the [plaintiff] must file a notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1) (Rev. 2019).  All actions against a governmental entity "shall be commenced within one (1) year after the date of the tortious, wrongful or otherwise actionable conduct . . . ." Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2019).

¶15.    In ***Barnes v. Singing River Hospital***, this Court, without citing any authority,

incorporated a discovery rule into the MTCA, stating that

> we choose to incorporate a discovery rule in actions brought under the [MTCA] involving latent injuries. Particularly considering the short, one-year statute of limitations period in § 11-46-11(3), we find that justice is best served by applying a discovery standard to such cases.

*Barnes v. Singing River Hosp.*, 733 So. 2d 199, 205 (Miss. 1999). "Following *Barnes*, this Court continued to apply its judicially-created discovery rule to claims filed under the MTCA." *Caves v. Yarbrough*, 991 So. 2d 142, 154 (Miss. 2008) (citing *Hayes*, 868 So. 2d at 1000-01 ("[t]he discovery rule applies to the one-year MTCA statute of limitations" (citing *Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 667 (Miss. 2002)); *Wright v. Quesnel*, 876 So. 2d 362, 366 (Miss. 2004) (MTCA's statute of limitations is "subject to a discovery rule" (citing *Hayes*, 868 So. 2d at 1000); *Moore*, 825 So. 2d at 667 ("[w]e have held that the discovery rule applies to the MTCA's statute of limitations" (citing *Barnes*, 733 So. 2d at 204); *Henderson v. Un–Named Emergency Room*, 758 So. 2d 422, 427 (Miss. 2000) ("this Court incorporated a discovery rule in actions brought under the Mississippi Tort Claims Act" (citing *Barnes*, 733 So. 2d at 206))).

¶16. Later, in *Caves*, this Court held that

> by reenacting Section 11-46-11(3) without addressing or countermanding this Court's decision in *Barnes*, the Legislature acquiesced and tacitly approved and incorporated into the statute a discovery rule as announced in *Barnes*. Pursuant to the doctrine of *stare decisis*, we therefore shall continue to recognize a discovery rule with respect to Section 11-46-11(3).

*Caves*, 991 So. 2d at 154.

¶17. In determining "[w]hat must be discovered," this Court acknowledged that "[n]ot all

8

discovery rules are created equal" and explained as follows:

> In analyzing what the plaintiff must discover in order to trigger the running of the statute of limitations, we ordinarily are guided by the wording of a statute's discovery provision.

> For instance, in ***Powe v. Byrd***, 892 So. 2d 223 (Miss. 2004), we applied a statutory discovery rule which states that medical-malpractice claims must be filed "within two years from the date the alleged *act, omission or neglect* shall or with reasonable diligence might have been first known or discovered." Miss. Code Ann. § 15-1-36(1) (Rev. 2003) (emphasis added). Pointing out that the plaintiff was aware of his injury as evinced by the two years of prior medical treatment, we specifically rejected the plaintiff's claim that the statute of limitations did not begin to run until he received an expert opinion. ***Id.*** at 227-28.

> A different discovery rule controls claims subject to our "catch-all" statute of limitations, which incorporates language different from the discovery rule in Section 15-1-36(1). Section 15-1-49(2) states:

> > In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have *discovered, the injury*.

> Miss. Code Ann. § 15-1-49(2) (Rev. 2003) (emphasis added).

> In ***Owens-Illinois, Inc. v. Edwards***, 573 So. 2d 704 (Miss. 1990), we held that the discovery rule provided in Section 15-1-49(2) will be applied to products liability cases, and that the cause of action accrues and the statute of limitations begins at the time the plaintiff can reasonably be held to have knowledge of the injury or disease. ***Id.*** at 708-09.

> Thus, comparing the discovery rules in the medical-malpractice statute and the "catch-all" statute, we have one which focuses on discovery of the date of the wrongful conduct, and another which focuses on the date of discovery of the injury or disease. It is simple enough to follow the dictates of these statutes, puzzling though their differences may be. The difficulty arises in applying, as we must today, a judicially-created discovery rule for which there is no statutory guidance.

9

*Caves*, 991 So. 2d at 154-55.

¶18.	This Court recognized that

> [t]here may be rare cases where the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

*Id.* at 155 (second alteration in original) (quoting ***Smith v. Sanders***, 485 So. 2d 1051, 1052-53 (Miss. 1986)).  Importantly, this Court concluded that "the limitations period for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it." *Id.*

¶19.	"[T]o claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding her injury." ***Hayes***, 868 So. 2d at 1001. "The discovery rule will toll the statute of limitations 'until a plaintiff "should have reasonably known of some negligent conduct, even if plaintiff does not know with absolute certainty that the conduct was legally negligent."'" *Id.* at 1000-01 (quoting ***Moore***, 825 So. 2d at 667). The discovery rule "focuses not on the date of a specific diagnosis, but rather the date on which the plaintiff knew or should have known she was injured and that defendant's negligent conduct caused the injury." ***Pollan v. Wartak***, 240 So. 3d 1185, 1193 (Miss. 2017).

¶20.	"The question of whether a statute of limitation is tolled by the discovery rule turns

on the factual determination of what the plaintiff knew and when." *Estate of Butler ex rel. Butler v. PHC-Cleveland, Inc.*, 282 So. 3d 441, 444 (Miss. Ct. App. 2019) (internal quotation marks omitted) (quoting *Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1249 (Miss. 2015)). "Application of the discovery rule is a fact-intensive process." *Huss v. Gayden*, 991 So. 2d 162, 166 (Miss. 2008) (internal quotation marks omitted) (quoting *Sarris*, 782 So. 2d at 725). "[T]he question of what knowledge should put a claimant on notice of the existence of a viable claim is not soluble by any precise formula." *Id.* (internal quotation marks omitted) (quoting *Sarris*, 782 So. 2d at 725).

¶21.    The circuit court found that the statute of limitations began to run on November 16, 2016, when Lula received the letter from Singing River. Specifically, the circuit court found that "[u]pon receipt of this letter, . . . [Lula] reasonably should have known of her alleged injury and she was on notice of Dr. Millette's alleged negligence in misdiagnosing her with multiple sclerosis." This Court disagrees.

¶22.    While the letter put Lula on notice that Singing River had "some questions" regarding "how Dr. Millette diagnose[d] and treat[ed] patients with multiple sclerosis," it did not specify what those questions were nor did it advise that Dr. Millette was negligent in his diagnosis or treatment. In fact, the letter emphasized "that competent medical professionals often have differing opinions, especially when it involves complex neurological conditions." The letter was sent to all of Dr. Millette's patients,[3] not to Lula individually, and it did not

---

[3] The record shows that at that time, Dr. Millette had more than two hundred patients.

11

address Dr. Millette's diagnosis or treatment of Lula personally.

¶23. The letter, which did not admit or even suggest mistreatment, misdiagnosis, or negligent conduct by Dr. Millette, was insufficient to put Lula on notice of her claim or injury. It is important to note that although Singing River was aware of Dr. Millette's misdiagnosis and mistreatment of patients, Lula was not. Lula did not have the benefit of the May 2016 memo and was therefore unaware that a misdiagnosis was a possibility. The November letter did not put her on notice that she had or could have been misdiagnosed with multiple sclerosis by Dr. Millette. Stated differently, the letter did not put Lula on notice that "some negligent" conduct had occurred. *Hayes*, 868 So. 2d at 1000-01. Instead, the letter simply advised that Singing River and Dr. Millette had "differing opinions" regarding "complex neurological conditions" and that, as a result, Dr. Millette would no longer base his practice at Singing River. In light of Dr. Millette's separation from Singing River, the letter gave the patient the option to obtain a reevaluation with another doctor. But the letter did not state that a reevaluation was required.

¶24. Singing River argues that Lula "did not act diligently in pursuing her rights." For support, Singing River cites numerous cases including *Hayes* and *Blailock ex rel. Blailock v. Hubbs*, 919 So. 2d 126 (Miss. 2005). But both cases are distinguishable.

¶25. In *Hayes*, the patient's bowels were perforated during a surgical procedure. *Hayes*, 868 So. 2d at 999. An infection then developed in the patient's blood stream. *Id.* The patient was later transferred to another hospital where she died. *Id.* The patient's death

12

certificate listed sepsis as one of the causes of death. *Id.* This Court found that "the discovery rule did not operate to toll the statute of limitations" because "the plaintiffs were not reasonably diligent in investigating the cause of [the patient]'s injuries." *Id.* at 1001. This Court explained that "[s]ince the death certificate included sepsis as one of the causes of death, it should have been apparent to the plaintiffs that some negligent conduct had occurred." *Id.* As a result, the Court found that the plaintiffs action was time barred. *Id.*

¶26. In *Blailock*, the minor patient developed cerebral palsy and suffered other permanent injuries as a result of complications surrounding his birth. *Blailock*, 919 So. 2d at 129. This Court found that "[t]he trial court did not err in refusing to toll the statute of limitations through the application of the discovery rule" because the plaintiffs "ha[d] been on constructive notice since [the child's] birth of potential medical negligence." *Id.* at 131, 130. The Court explained,

> The [plaintiffs] asserted . . . that [the doctor] should have been contacted prior to the time that the nurses' notes indicate he was contacted. The medical records indicating the notification discrepancy have been available since [the child]'s birth. The [plaintiffs] do not argue that the hospital delayed in providing the records. Nor have they shown that they were prevented from obtaining the records or that the needed information was otherwise concealed. As such, the [plaintiffs] cannot now claim to have exercised reasonable diligence in discovering the facts upon which they now base their claim of negligence . . . .

*Id.* at 130.

¶27. Here, unlike in *Hayes*, there is no certificate listing Lula's injury or cause of injury. Singing River's generic letter did not advise or put Lula on notice that she had been

misdiagnosed with multiple sclerosis. The letter simply advised that Singing River questioned how Dr. Millette diagnosed his patients, not that the diagnosis itself was incorrect. Additionally, unlike in *Blailock*, Lula's injury, i.e., her misdiagnosis, was not apparent. Lula had been diagnosed with and had been receiving treatment for multiple sclerosis for many years with no reason to believe such diagnosis was incorrect. Moreover, unlike in *Blailock*, there is no indication that Lula should have known based on her medical records that she did not have multiple sclerosis. In fact, the medical records show that shortly before she received Singing River's letter, Lula was seen by Dr. Millette, who noted that Lula "had a well-established history of multiple sclerosis." Notably, even Dr. Grow, during Lula's initial reevaluation, was unable to definitively opine as to Lula's condition. It was not until Lula underwent a lumbar puncture, recommended by Dr. Karcher, that she learned she did not have multiple sclerosis.

¶28. Recently, in *Green v. Singing River Health Sys.*, the Court of Appeals addressed a nearly identical case as the one before us. *Green v. Singing River Health System*, No. 2019-CA-00207-COA, 2020 WL 1016648 (Miss. Ct. App. Feb. 4, 2020), *cert. denied*, 291 So. 3d 1112 (Miss. 2020). Green, a long time patient of Dr. Millette, was diagnosed with multiple sclerosis in 2015. *Id.* at *1. Green received the same November 2016 letter from Singing River advising of Dr. Millette's separation. *Id.* at *2. In response to the letter, Green contacted Singing River and was reevaluated by a new doctor. *Id.* at *3. In May 2017, Green learned that she did not have multiple sclerosis and did not need further treatment. *Id.*

14

Green sent Singing River and Dr. Millette a notice-of-claim letter on January 30, 2018, and later filed suit on May 29, 2018. *Id.* Singing River moved to dismiss Green's case as untimely. *Id.* The trial court found that the one-year statute of limitation began to run upon receipt of the November letter. *Id.* Because Green failed to timely file her claim, the trial court granted Singing River's motion and dismissed Green's case. *Id.*

¶29. On appeal, the Court of Appeals disagreed with the trial court and found that "Green's actions d[id] not support Singing River's claim that she knew or should have known in November 2016 that she did not have multiple sclerosis." *Id.* at *6. The court noted that "[a]fter being told in the letter that [Dr.] Millette would no longer be treating her, Green simply did as instructed—she called and was scheduled to see her 'new doctor.'" *Id.* The court concluded that Green's actions "show[ed] [her] reasonable diligence in discovering her claim." *Id.*

¶30. Here, the record shows that upon receipt of Singing River's letter, Lula worked with Singing River to obtain a reevaluation and was initially referred to Dr. Grow and later to Dr. Karcher. As in *Green*, Lula's actions do not suggest that she knew or should have known in November 2016 that she did not have multiple sclerosis. *Id.* Instead, like Green, Lula's actions show Lula's reasonable diligence in investigating her claim. *Id.*

¶31. Singing River asserts that "[t]he discovery rule did not continue tolling until [Lula] was subjectively [or absolutely] certain of her claim of negligence; the limitations period had already begun in November 2016." This Court does not suggest that the discovery rule

continued to toll or that the statute of limitations did not commence until Lula learned with subjective or absolute certainty that her multiple-sclerosis diagnosis was incorrect. Indeed, as previously noted, the discovery rule "focuses not on the date of a specific diagnosis, but rather the date on which the plaintiff knew or should have known she was injured and that defendant's negligent conduct caused the injury." **Pollan**, 240 So. 3d at 1193. Instead, we simply find, based on the issue before the Court, that the statute of limitations did not commence upon receipt of the November 2016 letter.

¶32. Lula's injury was the misdiagnosis of multiple sclerosis. The November 15, 2016 letter was insufficient to put her on notice that she was injured and that Dr. Millette's negligent conduct caused the injury. **Id.**; *see also* **Caves**, 991 So. 2d at 155 ("the limitations period for MTCA claims does not begin to run until . . . the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it."). Therefore, the circuit court erroneously concluded that the one-year statute of limitations began to run when Lula received the letter on November 16, 2016.

¶33. At this time, nothing in the record suggests that the one-year statute of limitations expired before Lula filed her notice of claim. Accordingly, the circuit court erred by dismissing her case.

## CONCLUSION

¶34. Applying de novo review, we hold that the circuit court erred by granting Singing River's motion to dismiss the complaint. The circuit court's final judgment is reversed, and

16

the case is remanded for further proceedings.

¶35.    **REVERSED AND REMANDED.**

     **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**